WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURRO-
GATE.—November, 1881.

## BRADY v. MCCROSSON.

*In the matter of the probate of the will of* JOHN
MCCROSSON, *deceased.*

The appointment of an executor is not an essential of a will..

The decedent requested A. to ask a scrivener to come and draw his will, at
the same time stating that he wished A. to be a witness. On a subse-
quent day,—that of the execution,—A. and another signed as subscrib-
ing witnesses in decedent's presence, after the will had been read in
their presence, nothing further being said to A. about signing, but the
other witness being duly requested. *Held,* a sufficient request to A.

After the instrument propounded as decedent's will, being a single page of
foolscap, containing no appointment of executor, had been read to and
approved by decedent, and signed and witnessed at the end, with due
formalities, a clause was added at the top of the second page, in the
witnesses' presence, and signed by decedent but not by the witnesses,
appointing his wife executrix. *Held,* that the first page was decedent's
will, and the same should be admitted to probate.

Coffin v. Coffin, 23 *N. Y.*, 9,—compared.

Sisters of Charity v. Kelly, 67 *N. Y.*, 415; McGuire v. Kerr, 2 *Bradf.*, 257;
Heady's Will, 15 *Abb. N. S.*, 211; Conboy v. Jennings, 1 *T. & C.*, 622
—distinguished.

APPLICATION for the probate of a will. The will
offered for probate was written upon a sheet of foolscap
paper. All of the disposing parts were written upon a
single page, by which decedent made his wife sole
devisee and legatee. In it, he named no one as executor.
The will was signed by the testator and two witnesses at
the foot of the page. After the scrivener had drawn
the will under decedent's direction, it was read over to
him in the presence of the witnesses ; he pronounced it
to be as he wished it, whereupon it was executed and
witnessed. After this had been done, and the will was

completed, the deceased wished the names of his wife and the scrivener inserted, as executors. The latter declined the appointment, but drew at the top of the second page an appointment of the wife as executrix, in these words : " I, John McCrosson, also appoint my wife, Jane McCrosson, executor to this my last will and testament ;" which was signed by decedent, but not by the witnesses. All this occurred while the witnesses were still present.

Decedent had requested McNamara, one of the witnesses, to see the scrivener, and ask him to come and draw his will, stating, at the same time, that he wished him, McNamara, to be a witness to it. On the day of its execution, nothing further was said to him about signing as a witness, but the other witness was then requested by the testator to sign, and both did then sign as such, in his presence.

Francis Larkin, *for proponent.*

Martin J. Keogh, *for contestant.*

The Surrogate.—The contestant, Mrs. Brady, a daughter of the deceased, objects, first, that the will was not properly executed, inasmuch as McNamara was not, at the time of the execution of the alleged will, requested to sign it as a subscribing witness. I do not regard the objection as of any force. He had been previously requested by the testator to witness his will, to be drawn ; he was present at the time it was prepared, heard it read, heard the other witness requested to sign, and signed himself in the presence of the deceased. This I think a stronger case than that of Coffin *v.* Coffin (23 *N. Y.*, 9).

The second objection is that, because the clause

appointing the wife executrix was not signed by the witnesses, therefore the alleged will is void as such. Neither do I deem this objection well taken. The cases cited by the contestant's counsel, to wit, Sisters of Charity v. Kelly (67 N. Y., 415); McGuire v. Kerr (2 Bradf., 257); and Heady's Will (15 Abb. N. S., 211); as well as Conboy v. Jennings (1 S. C. [T. & C.], 622), cited by proponent's counsel, each presents a state of facts materially different from that existing in this case. Here, the will was understandingly completed, and the deceased assented to its correctly expressing his wishes, before it was executed. Then, as an afterthought, the matter of the appointment of an executor arose. If the appointment of the executor had not suggested itself to the mind of the deceased until a week or a month had elapsed, and he had then executed such an unattested writing as this, no one, I think, would claim that thereby the previously duly executed will was rendered void. If this be so, then it strikes me that, if done within a day, or an hour, or any shorter period, it would be equally harmless to destroy it.

It was the ancient rule that no paper in the nature of a will would be valid as such unless it contained the appointment of an executor, but such long since ceased to be the law. The statute makes provision for the appointment of an administrator with the will annexed, where no executor is named in the will. I think the will properly executed as such, and that it should be admitted to probate.

Decreed accordingly.