In the Matter of the Probate of the Will of SAMUEL WILCOX, Deceased.

(*Surrogate's Court, Monroe County, Filed June 23, 1892.*)

WILL—ALTERATIONS BY TESTATOR—EFFECT OF.

An interlineation, erasure or other alteration made in a will, either by the testator or a stranger, after due execution of the instrument,

without a new attestation, does not avoid the instrument, but the court may disregard the same and probate the will according to its original language, when that can be ascertained.

Probate of will.

Hubbell & McGuire and C. A. Shuart, for the proponents; John Van Voorhis and C. D. Kiehel, for the contestants.

ADLINGTON, S.—The question of the due execution of this will has been heretofore settled by the courts, and the only point now remaining to be determined arises out of certain alterations and erasures appearing on the face of the instrument. In two clauses of the will, in which legacies of $7,000 were given to the relatives of the testator, the letter "s" has been erased and the letters "el" substituted therefor, thus changing the amount of the legacies from $7,000 to $11,000. In another bequest the words "the use of" have been interlined, though the change is not really material. This interlineation and the substitution of the letters "el" for "s," just mentioned, have been done with a different ink from that with which the body of the will was written, and there is also much doubt whether the handwriting in which these changes were made is the same as that in which the rest of the instrument is written.

The fifth clause of the will originally read as follows: "I give and bequeath to my sister, Mary Rich, the use of seven thousand dollars during her life time, to be invested in bond and mortgage on unencumbered real estate under the direction of my executors herein named in trust, and after her decease goes to her daughter Susan Richards, under the same directions as enjoined on Mary Rich during the life time of Susan *Richards; after her decease it shall go to her children in equal shares.*"

At some time the words at the end of said clause, here put in italics, have been erased, and can now be read only from the marks of the pen upon the paper, the ink having been wholly scraped away. The contestants allege that these alterations in

the will were made after its execution by a person claiming under the instrument, and that the legal effect of the change is to avoid the will.    In view of the fact that the alterations were not noted at the bottom of the will, and were of a nature to excite suspicion, the proponents were called on to give such evidence as they had as to when and by whom the alterations were made; and the contestants then gave testimony in support of their allegations as to the changes in the will.    Crossman v. Crossman, 95 N. Y. 153; Williams v. Ashton, 1 Johns. & Hem. 115.

On the evidence adduced I held that the alterations had been made since the execution of the will, either by the testator or by some person unknown, but not by the person charged by the contestants with the offense.    The legal question to be decided is, therefore, what is the effect of material alterations in the will, made after its execution either by the testator or a stranger? It is a well settled rule of law that a material alteration in a deed, or other written contract, which has been duly executed and delivered, made without the knowledge or consent of the party bound thereby, avoids the instrument as against such party.    It is obvious, however, that there is a wide difference between a deed, or ordinary contract, and a will.    The execution and delivery of a deed, or contract, fixes irrevocably the liability of the grantor or obligor; but the execution of a will places no obligation or liability upon any one, nor does it confer vested rights upon any one.    The testator may revoke or destroy the will at pleasure, and he may change or alter its provisions as often as he chooses, provided he has the altered instrument re-executed and re-attested according to law.    Even after the testator's death the instrument has no force until duly established in a proper court, and, after probate, any beneficiary named therein may refuse to accept a legacy, or other provision made for him in the instrument, if he elects so to do.    It is apparent, therefore, that the peculiar nature of a will makes inapplicable to it the rule of law heretofore referred to in regard

to deeds, or other written contracts, and that the decision in this case must rest upon other principles.

In regard to all wills the great object of the courts is to give full effect to the intention of the testator, but the will to which such effect is to be given is one made in conformity with the requirements of the statute. In the case of an interlineation, or other alteration by the testator, without a new attestation, if effect should be given to such change, the statute of wills, which requires an attestation by subscribing witnesses, would be disregarded. If, on the contrary, a will were, because of alterations, to be held entirely void, it might utterly defeat the intentions of the testator. To avoid this dilemma of disobeying the mandate of the legislature on the one hand, or of defeating the intenton of the testator on the other, the courts, in case of an interlienation, erasure or other alteration, made in a will, either by the testator or a stranger, after the due execution of the instrument, disregard the change and probate the will according to its original language, when that can be ascertained. Doane v. Hadlock, 42 Maine, 72; Smith v. Fenner, 1 Gall. (U. S. C. C.) 170; Will of Tonnele, 5 N. Y. L. O. 254; Pringle v. McPherson, 2 Brevard (S. C.), 279; Stover v. Kendall, 1 Coldw. (Tenn.) 557; Wheeler v. Bent, 7 Pick. 61; Penniman Will Case, 20 Minn. 245; Wolf v. Bollinger, 62 Ill. 368; Locks v. James, 11 M. & W. 901; Short v. Smith, 4 East, 418; In re Hardy, 30 L. J. Prob. 142; Cooper v. Bockett, 4 Moore, P. C. 419.

While in the courts of this State this precise point seems to have been very little discussed, yet there are several cases indicating the opinions of the judges upon the question. Before the revision of the statutes of this State a will of realty only passed such lands as the testator owned at the time of the execution of the will. In the case of Jackson v. Holloway, 7 Johns. 394, which arose while that was the law of the State, the testator had made his will devising all lands which he was possessed of to his sons, but after its execution he altered the clause so as to read "all lands which I die possessed of." This change

effected a material alteration, as the testator had bought other lands since the execution of the will. As to the effect of the alterations the court said: "The obliterations in the will were made not with the intent to destroy the devise already made, but to enlarge it, by extending it to the lands subsqeuently acquired. The testator, however, failed in making interlineations and corrections which could operate, from not having the amendments attested according to law. The obliterations cannot, therefore, destroy the previous devise, for that was not the testator's intention. It is, therefore, very clear that the first devise must stand good."

There are many cases in the Surrogates' Courts in this State in which it has been held, without much discussion of the question, that wills in which unattested alterations or obliterations have been made by the testator since the execution of the instrument should be admitted to probate and recorded in their original form. McPherson v. Clark, 3 Bradf. 92; Matter of Prescott, 4 Redf. 178; Wetmore v. Carryl, 5 id. 544-553; Dyer v. Erving, 2 Dem. 160-183; Will of Wood, 32 St. Rep. 286. The doctrine of these cases is also held to be the law of this State in Quinn v. Quinn, 1 T. & C. 437. In the will there considered the testator, after its execution, had erased some legacies, and in some bequests had changed the name of the beneficiary. The General Term directed the entire will as originally executed to be admitted to probate.

In Lovell v. Quitman, 25 Hun, 537, affirmed in the Court of Appeals, 88 N. Y. 377, two bequests, one of $5,000 and one of $2,000, had been obliterated, or erased, with a pen, but were still legible. The appellants claimed that the parts of the will so obliterated were revoked, and that seems to have been the only point argued by counsel, or discussed in the opinions of the appellate courts. The surrogate, however, admitted the whole will, including the obliterated clauses, to probate, and his action in this respect was approved by the higher courts, which affirmed his decree. The text writers also hold opinions upon the point under consideration similar to those heretofore expressed.

Woerner, in his American Law of Administration, Vol. 1, page 92, says: "If a legacy be obliterated by a stranger, or inserted by interlineation, or changed in effect or amount, and the original legacy be known, it may be proved as it originally stood." In 1 Redfield on Wills, page 315, paragraph 22, it is said: "Where the testator makes an alteration in his will, by erasure or interlineation or in any other mode, without authenticating such alteration by a new attestation, in the presence of witnesses, or other form required by the statute, it being presumed that the erasure was intended to be dependent upon the alteration going into effect as a substitute, such alteration not being so made as to take effect, the will stands, in legal force, the same as it did before, so far as it is legible after the attempted alteration." In Schouler on Wills, sections 434 and 432, the rule is stated as follows: "When a will is informally altered by the testator * * * the legal effect is not to make the will void, but to establish it in probate as it stood before the change was made." "Alterations made in a will by a stranger after its due execution and without the testator's knowledge or sanction do not affect the validity of the testament in other re-respects." "If there is no sufficient attestation of the will as altered the alteration cannot take effect, but the will stands as before."

I conclude, therefore, that the will must be admitted to probate and recorded as it was before the alterations and obliterations before mentioned were made; and a decree may be entered in accordance with this opinion on two days' notice.